ESSEX COUNTY PARK COMMISSION, PROSECUTOR, v. THE BOARD OF PUBLIC UTILITY COMMISSIONERS, AND PUBLIC SERVICE CO-ORDINATED TRANSPORT, DEFENDANTS.

Submitted August 1, 1943—Decided October 5, 1943.

Before Justices PARKER, HEHER and PERSKIE.

For the prosecutor, *Abram H. Cornish.*

For the defendant the Board of Public Utility Commissioners, *Frank H. Sommer.*

For the defendant Public Service Co-ordinated Transport, *William H. Speer.*

The opinion of the court was delivered by

PARKER, J.   This writ of *certiorari* brings up an order by the Board of Public Utility Commissioners, dated April 28th, 1943, granting permission to Public Service Co-ordinated Transport to operate ten motor buses from Newark to West Orange via Park Avenue, substantially "for the duration" and subject to the conditions of *Pamph. L.* 1942, *p.* 273 (chapter 49), which is a war emergency act, enabling the Board (section 3) "without hearing and without municipal consent [to] issue * * * temporary permits for autobus operation and * * * prescribe the termini * * * route, * * * and conditions of such operation."

This statute is connected with chapter 390 of *Pamph. L.* 1941, extended for the duration, *Pamph. L.* 1942, *p.* 361, enabling autobuses on a specified route to digress so as to connect with war industries.

The gravamen of the case for the prosecutor is that Park Avenue is not an ordinary highway, but by law is under the special jurisdiction of the Essex County Park Commission, which hitherto has by "ordinance" lawfully forbidden trucks, business vehicles and buses to traverse it longitudinally, except that delivery vehicles may enter from a cross street, and then must leave Park Avenue at the next cross street. Park Avenue has been essentially a double east and west highway for private non-business vehicles, with a grass plot

down the middle, the roadway on the north side west bound, on the south side east bound, with traffic lights adjusted to a continuous speed of thirty miles per hour from Roseville Avenue, Newark, to West Orange. Germane to the application is the fact, among others, that the Edison works at the West Orange end employ, as claimed, 3,500 or more operatives, a large percentage of whom live in Newark. At the Newark end there seem to be several other war industries. There are parallel routes, as the map shows: but we have no difficulty, notwithstanding a conviction of the desirability in ordinary times of restricting this great driveway to a limited use, in holding that as a matter of public policy, in war time that desirability, like any other special privilege, should yield to the needs of war. As we understand the case, no question is raised as to the constitutional power of the legislature to modify or even revoke the rights and privileges of the Essex County Park Commission. The question before us is whether as a logical result of chapter 49 of 1942 it has effectively done so, by bestowing upon its creature the Public Utilities Board, powers which, when exercised, override for the time being, the powers and privileges of the Essex County Park Commission. It seems clear to us that the power conferred on the Utility Commission is comprehensive, not only over highways generally under the control of the municipalities through which they run, but also over exceptional highways ordinarily controlled by agencies other than municipalities, as for example the present prosecutor. It should be borne in mind that the statute, chapter 49 of 1942, is not in terms an amendment of or supplement to the Utility acts, or to our municipal legislation, but is an act applicable to all highways, relating to the great increase in autobus transportation thereon, and designating the Utility Commission as a state agency to issue temporary permits for autobus transportation "without hearing and without municipal consent, * * * and * * * prescribe the termini of such operation, the route, time, fares, terms and conditions of such operation." Such is the language of section 3. In fact, however, the Commission did not act "without hearing." It held a hearing, which the parties attended and produced evi-

dence which covers 185 pages of the printed case before us, and filed a careful written decision.

The case is submitted on briefs without oral argument. For the Park Commission, prosecutor, the first main point, shortly stated, is that prior to the act of 1942, the Board of Public Utility Commissioners had no jurisdiction over streets and public roads. This, for present purposes, and without general admission of its correctness, may be conceded. It may also be conceded for present purposes that until the act of 1942, chapter 49, jurisdiction over Park Avenue for purposes of traffic regulation was exclusively vested in the Essex County Park Commission. The next point for prosecutor is the crux of the case, viz, that chapter 49 of 1942 did not impair the previous exclusive jurisdiction of the Park Commission, and consequently the order now under review was invalid as affecting that jurisdiction. This point we deem wholly without substance. The statute under consideration is broad and sweeping. No constitutional infirmity is even suggested. It is avowedly an emergency war measure; drastic perhaps, but the wisdom or reasonableness of a statute is not for the courts. As a matter of construction or interpretation we think the 1942 act clearly does impair the former jurisdiction of the Park Commission, to the extent of empowering another state agency, the Utility Commission, to regulate autobus traffic on any highway within the purview of the legislation.

So much for the legal questions involved. It is argued that the Board reached a wrong result on the evidence before it. One answer, and perhaps a sufficient one, is that by the express language of the statute the Board may act "without hearing." However, we have considered the evidence, and conclude that there was sufficient to support a finding that the permit should be granted. Some point is made of the claim that the existing road surface is not suitable for bus traffic. As to this it seems sufficient to say that the exigencies of war must disregard mere questions of economy and conservation.

The writ will be dismissed.